IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID BOURKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 03 CV 07749 |
| v. | ) | |
| | ) | Honorable James B. Zagel |
| VILLAGE OF DOWNERS GROVE, ET AL. , | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS, WAYNE BRUCAR'S AND SCOTT CONGER'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, Wayne Brucar ("Brucar") and Scott Conger ("Conger"), by their undersigned attorneys, respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Brucar and Conger are entitled to summary judgment in their favor and against the plaintiff, David Bourke ("Bourke"), as to all relief sought in plaintiff's complaint against them because (1) plaintiff's claim for malpractice, as a result of professional judgment during jury selection, cannot be held as a matter of law and policy to be actionable malpractice or be the proximate cause of plaintiff's loss; (2) the claim is speculative, as a matter of law; and (3) defendants, Brucar and Conger, are entitled to summary judgment on plaintiff's other claims for malpractice because plaintiff has abandoned said claims by failing to provide expert opinion as to the standard of care, and in support thereof state:

## I.    INTRODUCTION AND STATEMENT OF FACTS

Plaintiff, David Bourke killed a man on April 16, 1998, and was found guilty of first degree murder by a unanimous DuPage County jury. Bourke appealed the decision and on August 21, 2001, the Illinois Appellate Court reversed plaintiff's conviction on the ground that the State did not disprove plaintiff's self-defense claims beyond a reasonable doubt and therefore

the State did not prove Bourke guilty of first degree murder.  (*People v. Bourke,* No. 2-99-0924, at 1 (Ill. App. Ct. Aug. 21, 2001) (the "Appellate Court Order")).[1]  In ruling the way it did, the Illinois Appellate Court did not reach Bourke's other arguments that his conviction should have been reduced to second degree murder and/or that his trial counsel, Conger and Brucar were ineffective. (Appellate Court Order, at 46).

On October 31, 2003, the plaintiff filed a civil complaint in which he asserted a section 1983 claim against the Village of Downers Grove and several of its police officers, alleging that those defendants caused plaintiff to have been deprived of a fair trial in the murder case by suppressing exculpatory evidence.  (Complaint, ¶ 1).[2]  Plaintiff also alleged a professional negligence/legal malpractice claim against his criminal defense counsel contending that they acted negligently in (i) not presenting testimony from a crime scene expert; (ii) failing to object to the admissibility of certain evidence; and (iii) "failing to exercise reasonable professional judgment during jury selection, in failing to make any objection to the admission into evidence of unfairly prejudicial photographs, and in failing to make any objection to the use of a tape recording that contained apparent erasures that excluded material that would have persuaded the jury to find plaintiff not guilty."  (Complaint, ¶ 13).  This court has exercised supplemental jurisdiction over plaintiff's professional negligence/legal malpractice claim.

---

[1] A true and correct copy of the Appellate Court Order is hereto attached as Exhibit "A" for the Court's convenience.  This Court may consider the Appellate Court Order in deciding the instant Motion because the Appellate Court's decision memorialized in the order is referred to in the Complaint and is central to Bourke's claim.  *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).  This Court may also take judicial notice of the order, and consider it on that separate and independent basis.  *See Henson v. CSC Credit Servcs.*, 29 F.3d 280, 284 (7th Cir. 1994).

[2] A true and correct copy of the Complaint is hereto attached as Exhibit "B" (hereto referred to as "Complaint") for the Court's convenience.

6411766v1 893190 53471

Plaintiff has retained one expert, Mr. David Thomas, in connection with his malpractice claims against Brucar and Conger. Mr. Thomas has given an opinion only as to the purported inadequacy of the jury selection. (*See* Thomas Report, generally; Thomas Dep., at 9, 94-95).[3][4] Thomas' opinion is limited to what he wrote in his report. (Thomas Dep. at 9, 94-95). Plaintiff has no expert as to his other legal malpractice claims.

The jury selection for the underlying criminal trial took place on April 20, 1999. (Report of Proceedings of April 20, 1999, at 1).[5] During the *voir dire* and jury selection, plaintiff Bourke was present with Brucar and Conger. (Report of Proceedings of April 20, 1999, at 1). The *voir dire* consisted of questions from the Court, from an Assistant State's Attorney, and from defense counsel Brucar. (*See* Report of Proceedings of April 20, 1999, generally). Brucar introduced the following pertinent areas to Bourke's case in his questioning to the jury: the case involved a self-defense, Bourke lived in a transient motel, there was a gun involved in the homicide, there was violent death and that Bourke was the cause of that death. (Report of Proceedings of April 20, 1999, at 46-61, 99-102).

At his deposition taken in the instant matter, Bourke stated that he remembered sitting through jury selection. (Bourke Dep., at 152).[6] During the juror questioning, Bourke claims to have raised some concerns with several potential jurors to his attorneys. In particular, Bourke

---

[3] A true and correct copy of David Thomas' Expert Report is hereto attached as Exhibit "C" (hereto referred to as "Thomas Report") for the Court's convenience.

[4] A true and correct copy of the Deposition Transcript of David Thomas taken on January 26, 2009 is hereto attached as Exhibit "D" (hereto referred to as "Thomas Dep.") for the Court's convenience.

[5] A true and correct copy of the April 20, 1999 Report of Proceedings is hereto attached as Exhibit "E" (hereto referred to as "Report of Proceedings of April 20, 1999") for the Court's convenience.

[6] A true and accurate copy of the Deposition Transcript of David Bourke taken on October 11, 2005 is hereto attached as Exhibit "F" (hereto referred to as "Bourke Dep.") for the Court's convenience.

6411766v1 893190 53471

stated that he expressed concerns about the demeanor of two jurors because they looked at him in a manner that was too "law and order." (Bourke Dep., at 152-55). When asked to characterize someone's demeanor as too "law and order," Bourke responded that it was "[j]ust a feeling" he had. (Bourke Dep., at 155). The other juror that Bourke expressed concerns about was a juror that had elicited some opinions regarding firearms during his *voir dire*. (Bourke Dep., at 155-58). The prospective juror that expressed concerns about firearms eventually became the foreman of the jury. Bourke stated that he did not know for sure what result would have occurred had these jurors not been selected to serve on the jury. (Bourke Dep., at 159-62). Specifically, Bourke gave the following answers when asked the questions at his deposition:

> Q.    Is it your contention that the purportedly negligent selection of this jury caused the jury to convict you?
>
> A.    Yes. I think it has some – something to do with it, yes.
>
> Q.    And what is your basis for saying that?
>
> A.    Because the man who became jury foreman was the one who off the record we heard after my conviction where some of the jurors want to talk and some don't, that some stayed behind and made the comment that the guy who was jury foreman had some fence-leaners lean his way. *And if that man wasn't on the there voicing his opinion, it could have been a different outcome.*
>
> Q.    It could have been?
>
> A.    *It could have been. We don't know that.*
>
> Q.    Are you aware of anything that this jury foreman did improperly in serving the jury?
>
> A.    No.
>
> Q.    And who did you hear this so-called off-the-record comment from? Other jurors?
>
> A.    No.
>
> Q.    Attorneys from the public defender's office.

4

\* \* \*

Q.    Other than this conversation you overheard between Mr. Ost and Miss Reed [attorneys from the public defenders office], any other basis for saying that any of these jurors did anything which caused you to be convicted?

A.    Not that I know of, nope.

(Bourke Dep., at 159-62) (emphasis added).

Brucar and Conger have testified in depositions.[7]  Both state that Bourke was present during the *voir dire* and that all three (Bourke, Brucar and Conger) discussed and consulted prior to accepting jurors.  (Brucar Dep., at 52-53; Conger Dep., at 41, 94-95).  Further, Brucar and Conger also expressed that they both use their professional judgment when selecting a jury. (Brucar Dep., at 51, 56; Conger Dep., at 40, 94-95).  In their professional judgment and after consulting with Bourke, Brucar and Conger decided to not exercise any peremptory challenges to strike any prospective jurors.  (Brucar Dep., at 52; Conger Dep., at 40).

During the jury selection process in this underlying case, the State asked to excuse two jurors preemptively prior to any questions by Brucar and Conger.  (Report of Proceedings of April 20, 1999, at 34).  Likewise, before Brucar and Conger had an opportunity to ask any questions of the jurors, the State asked to strike a juror for cause, but the trial court denied the request and the State made no further motion as to that juror.  (Report of Proceedings of April 20, 1999, at 44-46).  The trial court also asked to have two prospective jurors to step down during its own *voir dire*.  (Report of Proceedings of April 20, 1999, at 70, 84).  After the

---

[7] A true and correct copy of the Deposition Transcript of Wayne Brucar taken on October 12, 2005 is hereto attached as Exhibit "G" (hereto referred to as "Brucar Dep.") for the Court's convenience; a true and accurate copy of the Deposition Transcript of Nathan Scott Conger taken on April 13, 2006 is hereto attached as Exhibit "H" (hereto referred to as "Conger Dep.") for the Court's convenience.

6411766v1 893190 53471

complete *voir dire* of the prospective jurors, Bourke, Brucar and Conger accepted the two (2)

panels of six (6) jurors that were placed in front of them. (Report of Proceedings of April 20,

1999, at 61, 101-02). The first two (2) alternate jurors that were questioned were also accepted

by all parties. (Report of Proceedings of April 20, 1999, at 102-15). All jurors that were

empanelled on the jury responded during *voir dire* that they could act in a fair and impartial

manner. (*See* Report of Proceedings of April 20, 1999, at 14, 17, 20, 22, 39, 41, 51-52, 73, 75,

77, 78, 87-88, 89, 102). Brucar and Conger did not move to strike any jurors for cause or

preemptively. (*See* Report of Proceedings of April 20, 1999, generally). During trial, one juror

(Saeed, Juror No. 193) was excused and an alternate female juror (Lipponeur, Juror No. 177)

was empanelled. (Report of Proceedings of April 21, 199, at 3-9).[8]

At the close of the criminal trial, a unanimous jury found Bourke guilty of first degree

murder and judgment was entered on the verdict. (Appellate Court Order, at 30). Bourke was

sentenced to 25 years in prison. (Appellate Court Order, at 1). Brucar and Conger timely moved

for a new trial and to reconsider the sentence arguing, among other things, that the State had

failed to prove Bourke guilty beyond a reasonable doubt.[9] The trial court denied the motions.

Bourke appealed his conviction to the Illinois Appellate Court through the DuPage

County Public Defender's Office and asserted three grounds on appeal: (1) the State failed to

disprove his affirmative defenses of self-defense and prove the elements of first degree murder

beyond a reasonable doubt; (2) his conviction should have been reduced to second degree

---

[8] A true and correct copy of the April 21, 1999 Report of Proceedings is hereto attached as Exhibit "I" (hereto referred to as "Report of Proceedings of April 21, 1999") for the Court's convenience.

[9] A true and correct copy of the Motion for a New Trial is hereto attached as Exhibit "J" (hereto referred to as "Motion for New Trial") for the Court's convenience; a true and accurate copy of the Motion to Reconsider Sentence is hereto attached as Exhibit "K" (hereto referred to as "Motion to Reconsider Sentence") for the Court's convenience.

murder; and (3) Brucar and Conger provided ineffective assistance of counsel. (Appellate Court Order, at 1-2). By its order entered August 21, 2001, the Illinois Appellate Court "reverse[d] because [it] conclude[d] that the State did not prove defendant guilty of first degree murder." (Appellate Court Order, at 2). The Court summarized its decision as follows:

> In conclusion, we hold that the State did not disprove beyond a reasonable doubt defendant's claim that he killed Johnson in defense of his person and his dwelling. The State did not prove as unreasonable defendant's account of his struggle with Johnson inside the motel room. Rather, that account was reasonably consistent with the condition of Johnson's and defendant's bodies. *Ruling as we do on this issue, we do not reach defendant's remaining arguments that his conviction should be reduced to second degree murder and that his trial counsel was ineffective.*

(Appellate Court Order, at 46) (emphasis added).

Bourke then filed this civil Complaint. (*See* Complaint, generally)(Docket #1). Brucar and Conger moved to dismiss plaintiff's legal malpractice claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket #7). On March 10, 2004, this Honorable Court denied their motion to dismiss. (Docket #10). On January 9, 2008 plaintiff sought to amend/correct complaint by filing an amendment to complaint, adding additional defendants. Plaintiff filed his amendment to the complaint on January 31, 2008. (*See* Amendment to Complaint, generally)(Docket 30).[10]

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The

---

[10] A true and accurate copy of Plaintiff's Amendment to Complaint is hereto attached as Exhibit "L" (hereto referred to as "Amendment to Complaint" for the Court's convenience).

7

primary purpose of a motion for summary judgment is to avoid a useless trial, and summary judgment is a procedural device for promptly disposing of actions in which there is no genuine issue of any material fact even though such issue might have been raised by formal pleadings. *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972). The very purpose of Rule 56 is to eliminate a trial in such cases where a trial is unnecessary and results in delay and expense. *Id.*

## III.   ARGUMENT

Defendants, Brucar and Conger are entitled to summary judgment as to all claims brought against them. Brucar and Conger are entitled to summary judgment because (1) plaintiff's claim for malpractice, as a result of their exercise of professional judgment during jury selection, cannot be held, as a matter of law and policy, as an actionable breach of duty or be the proximate cause of plaintiff's loss; (2) the claims of malpractice are speculative as a matter of law; and (3) defendants, Brucar and Conger, are entitled to summary judgment on plaintiff's other claims for malpractice because plaintiff has abandoned said claims by failing to provide expert opinion as to those specific matters.

### 1.   THE EXERCISE OF PROFESSIONAL JUDGMENT DURING JURY SELECTION CANNOT BE ACTIONABLE MALPRACTICE OR THE PROXIMATE CAUSE OF PLAINTIFF'S LOSS AS A MATTER OF LAW AND AS A MATTER OF PUBLIC POLICY.

In a legal malpractice action in Illinois, in order to prevail, the plaintiff must plead and prove that the defendant attorneys owed the client a duty of due care arising from the attorney-client relationship, that the defendants breach that duty, and that as a proximate result, the client suffered injury. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 225-26, 856 N.E.2d 389, 394 (2006). When the underlying case is a criminal one, proof of an additional element is required before the plaintiff may recover for his or her criminal defense attorney's malpractice. The plaintiff must prove his or her actual innocence in the underlying criminal case. *Kramer v.*

*Dirksen*, 296 Ill. App. 3d 819, 695 N.E.2d 1288, 231 Ill. Dec. 169 (1st Dist. 1998). This is commonly referred to as the "actual innocence rule." With regard to the proximate causation element, the plaintiff is required to establish that *but for* the negligent acts or omissions of the attorney, he would have prevailed in the underlying matter. *Tri-G, Inc.*, 222 Ill.2d at 226; *Sheppard v. Krol*, 218 Ill.App.3d 254, 257, 578 N.E.2d 212, 214 (1st Dist. 1991); *Claire Assoc. v. Pontikes*, 151 Ill.App.3d 116, 120, 502 N.E.2d 1186, 1190 (1st Dist. 1986).

Illinois adheres to the rule that an attorney is not liable to a client for errors in judgment, but only for failing to exercise a reasonable degree of care and skill, notwithstanding that the exercise of that judgment may have lead to an unfavorable for a client. *Goldstein v. Lustig*, 154 Ill.App.3d 595, 600, 507 N.E.2d 164, 168-69 (1st Dist. 1987). An attorney is presumed to have discharged the duty to exercise a reasonable degree of care and skill and the plaintiff has the burden to plead facts establishing the attorney breached a duty and plaintiff incurred "actual damages" as a proximate result of the defendant's alleged negligence. *Bronstein v. Kalcheim & Kalcheim, Ltd.*, 90 Ill.App.3d 957, 959, 414 N.E.2d 96, 98 (1st Dist. 1980), *see also Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 225-26, 856 N.E.2d 389, 394-95 (2006).

A litany of Illinois cases address professional judgment in the context of criminal cases claiming ineffectiveness of counsel. The Seventh Circuit has established that malpractice is the civil counterpart to ineffectiveness of counsel in criminal cases. *See Winniczek v. Nagelberg*, 394 F.3d 505, 507 (7th Cir. 2005); *see also Praxair Inc. v. Hinshaw & Culbertson*, 235 F.3d 1028, 1031 (7th Cir. 2000). In ineffectiveness of counsel cases, Illinois courts have consistently ruled that a defense counsel's decision to preemptively challenge jurors or challenge jurors for cause, or not, during *voir dire* is a matter of professional judgment and trial strategy and therefore, is given great deference. *See People v. Begay*, 377 Ill.App.3d 417, 422-23, 879

N.E.2d 962, 968 (1st Dist. 2007) (defense counsel's decision in an armed violence and aggravated battery criminal matter to not challenge juror for cause when juror's mother had been attacked by a knife-wielding assailant was a matter of trial strategy); *see also People v. Lopez*, 371 Ill.App.3d 920, 930-32, 864 N.E.2d 726, 736-37 (1st Dist. 2007) (holding that defense counsel did not render ineffective assistance in prosecution for first-degree murder by not using peremptory strikes against two jurors who allegedly expressed an inability to be fair if the evidence showed that defendant drank alcohol and ingested prescription drugs prior to shooting; counsel's decision to accept those jurors was held to be a matter of trial strategy); *People v. Powell*, 355 Ill.App.3d 124, 140-44, 822 N.E.2d 131, 146-48 (1st Dist. 2004) (defense counsel was not ineffective for failing to request that the circuit court question the venire regarding potential gang bias in murder prosecution); *People v. Bowman*, 325 Ill.App.3d 411, 421-27, 758 N.E.2d 408, 417-22 (1st Dist. 2001) (defense counsel was not ineffective due to his failure to peremptorily challenge prospective juror who stated that the rapes of her mother and sisters would "probably" cause her to be unfair, in prosecution for aggravated criminal sexual assault; the decision to exercise a peremptory challenge was a strategic decision, defendant failed to establish that defense counsel's decision was not a matter of jury selection strategy, and defendant failed to establish that but for counsel's alleged error the results of the trial would have been different); *People v. Miles*, 176 Ill.App.3d 758, 766, 531 N.E.2d 891, 895 (1st Dist. 1988) (holding that failure to challenge prospective juror did not constitute ineffective assistance of counsel in that there was no reasonable possibility that jury without juror complained of would have had reasonable doubt as to murder defendant's guilt). Likewise, Illinois courts have stated that, *"[t]he decision as to whether to question potential jurors on a particular subject is considered to be one of trial strategy, which has no bearing on the competency of counsel."*

10

*People v. Furdge*, 332 Ill.App.3d 1019, 1026, 774 N.E.2d 415, 421 (1ˢᵗ Dist. 2002).  (Emphasis added.)

Here, defense counsels' acts and/or purported omissions were decisions of trial strategy and therefore, not actionable malpractice.    Moreover, plaintiff has not established any supportable action for malpractice because it has not established any facts supporting the requisite proximate causation.

        a.    **Illinois law and public policy demand that an attorney shall not be held liable for his exercise of professional judgment in selecting a jury.**

Plaintiff has alleged that Brucar and Conger conducted the trial in an incompetent manner by failing to exercise reasonable professional judgment during jury selection.  Plaintiff relies upon Mr. Thomas' opinion.  In his deposition, Mr. Thomas stated that what is written in his report is the substance of his opinion.  (Thomas Dep., at 94-95).  In his report, Mr. Thomas opined that Brucar's *voir dire* was: (1) too brief, (2) superficial, (3) inadequate because "entire areas relevant to the case were not even broached," i.e., consumption of alcohol, (4) inadequate because questions that were asked were posed in the abstract and in a leading, not open-ended fashion; and (5) inadequate because Brucar did not make any challenges for cause and did not exercise any peremptory challenges.  (Thomas Report, at 2-6).  Thomas further states that "[i]n reversing Mr. Bourke's conviction, the Appellate Court necessarily found that the jurors accepted by defense counsel without challenge did not function in a rational manner." (Thomas Report, at 5).

Mr. Thomas' criticisms of Brucar and Conger boil down to the following: (1) defense counsel did not ask enough questions and/or the so-called "right" questions during the *voir dire* and (2) defense counsel did not exercise any challenges to strike jurors.  Both arguments are

11

clearly within the realm of trial strategy and the exercise of professional judgment and thus, cannot be actionable malpractice.

As stated above, attorneys cannot be held liable for matters of professional judgment, even if that the exercise of that judgment may have occasioned an unfavorable result for the client. *See Goldstein v. Lustig*, 154 Ill.App.3d 595, 600, 507 N.E.2d 164, 168-69 (1st Dist. 1987); *see also York v. Steifel*, 109 Ill.App.3d 342, 350, 440 N.E.2d 440, 446 (1982), *aff'd in part and rev'd in part*, 99 Ill.2d 312, 458 N.E.2d 488 (1983). The decision of what questions to ask during *voir dire* is a matter consistently held to be within the trial strategy of counsel. *See People v. Furdge*, 332 Ill.App.3d 1019, 1026, 774 N.E.2d 415, 421 (1st Dist. 2002) (holding that defense counsel's failure to question potential jurors as to any potential bias against gangs during voir dire was reasonable trial strategy).

Further, the Seventh Circuit has proclaimed that decisions on selection of a jury are among the many entrusted to counsel rather than defendants personally. *United States v. Boyd*, 86 F.3d 719, 723 (7th Cir. 1996). The court further stated that:

> "Decisions about challenges to jurors are of another order altogether. No one knows in advance how a potential juror will react to the evidence, or how the jurors will interact with each other in the jury room. Even experienced advocates find prediction difficult. The best available study concludes that both prosecutors and defense counsel, in exercising peremptory challenges, are as likely to remove from the jury person who favor their cause as persons who vote against it."

*Boyd*, 86 F.3d at 724 citing Hans Zeisel & Shari Seidman Diamond, *The Effect of Peremptory Challenges on Jury and Verdict: An Experiment in a Federal District Court*, 30 Stan.L.Rev. 491 (1978).

Here, Brucar asked questions to the potential jurors regarding what the defense thought were pertinent issues to the case, such as: self-defense, transient living, guns, and violent death

cause by Bourke. (Report of Proceedings of April 20, 1999, at 46-61, 99-102). Questioning the potential jurors on these issues and deciding to forego questions in areas upon which experienced advocates may reasonably differ cannot be held, as a matter of law, to be malpractice. Rather, it was the decided trial strategy of Brucar and Conger. Even plaintiff's expert stated that he "cannot recall any reported decision where a lawyer was found guilty of malpractice based solely upon voir dire." (Thomas Dep., at 71).

As cited above, the decision to use peremptory challenges has consistently been held within the realm of trial strategy. Plaintiff's retained expert even admitted that the use of a specific number of peremptory challenges would be an "arbitrary" proposition and that the use of peremptory challenges "depends on the facts of the case." (Thomas Dep., at 61).

The facts here show that prior to defense counsel having an opportunity to question specific jurors, two jurors had been peremptorily challenged by the State and two jurors had been excused by the court. (Report of Proceedings of April 20, 1999, at 34, 70, 84). Further, the State asked to strike a juror for cause (Saeed, Juror No. 193), but the trial court denied the request and the State made no further motion as to that juror. (Report of Proceedings of April 20, 1999, at 44-46). When questioned about why the State did not decide to use a peremptory challenge on the juror that it tried to exclude for cause, Mr. Thomas agreed that it was a matter of "judgment" of the Assistant State's Attorney whether to use a peremptory challenge or not. (Thomas Dep., at 70-71). Law and logic dictate that Brucar and Conger's decision to not exercise a peremptory challenge therefore, also, must be held to be an exercise of "judgment." Mr. Thomas' mere disagreement with Brucar and Conger's jury selection techniques cannot move this subject matter outside of the realm of trial strategy and professional judgment.

6411766v1 893190 53471

Public and judicial policies also support summary judgment. An attorney's ability to exercise professional judgment on a wide variety of issues is an inexorable function of a lawyer acting in the administration of justice. Indeed, it is the essence of the learned profession.[11] For this reason, public policy requires that a lawyer's right to exercise of judgment be given special consideration, including immunity from civil liability. Even if a subsequent critic may believe that a "better" opinion or "more effective" strategy might or should have been employed, such cannot render judgmental determinations by attorneys amenable to legal malpractice claims. Rather, the existence of a subsequent disagreement between experts only serves to underscore the existence of a legitimate professional judgment call. In *Woodruff v. Tomlin*, 616 F.2d 924, 930 (6th Cir. 1980), one of the seminal cases on judgmental immunity, the court held:

> "[T]here can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment. This is a sound rule. Otherwise every losing litigant would be able to sue his attorney if he could find another attorney who was willing to second guess the decisions of the first attorney with the advantage of hindsight."

*Woodruff,* 616 F.2d at 930. The *Woodruff* court held that the alleged failure to change venue, to consult with a traffic reconstruction expert and to concede the negligence of one of three clients on appeal as exercises in professional judgment that were not reviewable by a jury. *Woodruff*, 616 F.2d at 930-33.

Courts have long noted that it is unfair to subject attorneys to liability simply because a judge or jury may *subsequently* disagree with the attorney's judgment or litigation tactics. Judgmental immunity rests upon firm policy considerations: (a) law is not an exact science and accordingly, no level of skill exists for which all differences of opinion, uncertainty or doubts

---

[11] See, Preamble to Illinois Rules of Professional Conduct: "Legal Services are not a commodity. Rather, they are the result of the efforts, training and judgment and experience of the members of the learned profession."

would be removed from the minds of other competent attorneys or judges; and (b) because attorneys are retained to litigate and render professional opinions (See, Illinois Rule of Professional Conduct 2.1 – "In representing a client, a lawyer shall exercise independent professional judgment ..."), and thereby make decisions that necessarily involve the choice between various alternatives, none of which is necessarily right or wrong. As a result, the need for judgmental immunity is critical to the legal profession.

There is an inherent danger that exists in permitting a lay jury to second guess an attorney's judgmental decision making. If every opinion on the law is subject to an objective factual determination before a jury, a number of insurmountable difficulties arise. The jury will be asked to review the attorney's judgment call in hindsight. Here, plaintiff asks this court in a subsequent jury trial to second guess attorneys' professional judgment in selecting a jury. [12]

---

[12]  The practical impossibility of proving that the plaintiff would have faired better but for the performance of a judge or jury is one that the Seventh Circuit addressed in *Jones Motor Co., Inc. v. Holtkamp, Liese, Beckmeier & Childress, P.C.*, 197 F.3d 1190 (7th Cir. 1999). There, in affirming summary judgment for the attorney-defendants the Court stated:

> "[G]iven the variance among juries, it would be necessary to try the malpractice claim a number of times in order to get a sense of the *average* performance of a jury in this case, and it is the difference between the judge's judgment and the judgment that [the plaintiff]could have *expected* from a jury, which would be an average jury performance, that is the measure of what [the plaintiff] lost as a result of its lawyers' negligence. So the suit was rightly dismissed after all."

*Jones Motor Co.*, 197 F.3d at 1195 (emphasis in original). Here, at a Rule 16 Conference, the parties would have to propose to the court a method of testing the plaintiff's speculative theory. Speculation aside, when faced with the dilemma at how to retry the underlying case in a malpractice case which alleged that certain evidence was omitted (as opposed to a faulty jury), this court has required the plaintiff to try its case by replicating the first trial by having the entire trial transcript presented to the jury through actors playing the roles of all of the witnesses and even the judge. *See National Union Fire Insurance Co. v. Dowd & Dowd P.C.*, No. 97 C 6200, (N.D.Ill. Nov. 9, 2000) (Memorandum and Order summarizing Rule 16 Conference); *National Union Fire Insurance Co. v. Dowd & Dowd P.C.*, 2 F.Supp.2d 1013 (1998), motion denied; 191

15

It is nearly impossible to grasp how an attorney could or would go about conducting *voir dire* and selecting a jury when, if he does not obtain a favorable verdict, he or she could be sued for malpractice for not having the right jurors seated in the juror's box. As plaintiff has alleged and his expert opined here, this would all be based not upon a specific juror's bias or inability to perform his/her duties, but purely conjecture and speculation that someone better *could* have been in selected. Following plaintiff's theory to its logical ends would result in attorneys preemptively challenging jurors just because someone better *might* or *could be* called into the venire. Attorneys would strike jurors for the sole purpose of not getting sued because he or she did not exercise any peremptory challenges; this may also raise *Batson* issues.

In today's litigious society, it is not difficult to find an agreeable expert witness to second guess any result, especially one that ended in a "loss" or settlement borne by the client. Indeed, the possibility of disagreement among the "experts" itself underscores the necessity of the doctrine of judgmental immunity. Also, our already overburdened court system would be strained without the protection of the judgmental immunity doctrine. The adversarial nature of our legal system mandates the need for the judgmental immunity doctrine. As long as there are adversarial proceedings and trials, there will always be disappointed litigants claiming that, in hindsight, the opinion or strategy employed by the attorney proved incorrect.

It is clear that the allegations of plaintiff's complaint, the depositions taken and the opinions contained in Mr. Thomas' expert opinion on the adequacy of the *voir dire* merely show that Brucar and Conger exercised their honest professional judgment in selecting a jury for the

---

F.R.D. 566 (1999), overruled, No. 97 C 6200, 1999 U.S.D. LEXIS 19857 (N.D. Ill. Dec. 23, 1999); See also, *Transcraft, Inc. v. Galvin, Stalmack, Kirshner & Clark*, 39 F. 3d 812 (7th Cir. 1994) (Malpractice jury verdict reversed because trial judge refused to admit a transcript of the underlying proceedings in the malpractice trial) (emphasis added). But it is unfathomable how the federal jury would determine if the *voir dire* caused the jury's verdict.

6411766v1 893190 53471

plaintiff in the underlying criminal proceedings.  As a matter of policy, no liability can attach for the jury's performance of its duty.

> **b.**  **As a matter of law, defendants' alleged acts and/or omissions cannot be the proximate cause of plaintiff's purported injuries.**

As stated, above, the proximate cause element of a professional malpractice claim requires a *but for* analysis (i.e., *but for* defendant's actions/omissions the plaintiff would not have been harmed).  Mr. Thomas' criticisms do not touch upon this rudimentary element necessary for a professional malpractice claim.  At most, Mr. Thomas offers a hindsight view that the jurors that were accepted and placed into the jury box functioned "irrationally." (Thomas Report, at 5). Somehow this purported irrationality of the jury in convicting Bourke is supposed to be imputed to the jury exercise of reason by Brucar and Conger.  This argument is legally and logically flawed, and Mr. Thomas' opinions are unlikely to be admissible at trial.

The Seventh Circuit has stated that "attorneys are not endowed with the gift of prophecy so as to predict what the verdict of a jury will be[.]" *Ballard v. Citizens Casualty Co. of N.Y.*, 196 F.2d 96, 102 (7th Cir. 1952).  Following this, there is no way that Brucar and Conger (or Thomas) could have prophesized that *but for* the jury they helped select would return an irrational verdict.  All that is and can be guaranteed under the Constitution is that a criminal defendant has the right to an impartial jury.  U.S. Const. amend. VI.  Bourke was provided with an impartial jury.  So held the trial judge.  (Judge Balakis denied Bourke's Motion for New Trial stating "I don't' [sic] feel there is any basis for me to usurp the jury's finding of fact in this case, therefore the motion is denied.")(*See* Report of Proceedings of July 15, 1999, at 25).[13]

---

[13] A true and correct copy of the July 15, 1999 Report of Proceedings is hereto attached as Exhibit "M" (hereto referred to as "Report of Proceedings of July 15, 1999") for the Court's convenience.

6411766v1 893190 53471

Jurors are considered impartial as long as they can "conscientiously and properly carry out their sworn duty to apply the law to facts of a particular case." *United States v. Delatorre*, 572 F.Supp.2d 967, 989 (N.D. Ill. 2008), quoting *Ross v. Oklahoma*, 487 U.S. 81, 86, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).   A request to excuse a juror must be supported by "specified causes or reasons that demonstrate that, as a matter of law, the [juror] is not qualified to serve." *Delatorre*, 572 F.Supp.2d at 989, quoting *Gray v. Mississippi*, 481 U.S. 648, 653 n. 3, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987).

Here, each and every juror that was empanelled on the jury of Bourke's criminal trial responded during *voir dire* that they could act in a fair and impartial manner. (*See* Report of Proceedings of April 20, 1999, at 14, 17, 20, 22, 39, 41, 51-52, 73, 75, 77, 78, 87-88, 89, 102). As discussed, above, the rest of the questions asked during *voir dire* were an exercise of professional judgment of counsel.  Neither plaintiff, nor plaintiff's retained expert, have alleged *any* misconduct by any of the empanelled jurors at the criminal trial.

Plaintiff admitted that had any jurors been excused for cause or preemptively during *voir dire*, he doesn't know if there would have been a different outcome of the criminal case. (Bourke Dep., at 159-62).   He only states that there *could have been* a different outcome. (Bourke Dep., at 159).  Further illustration of the speculative nature of plaintiff's claim is that there is no evidence of biased juror that was empanelled in this underlying criminal trial. Likewise, plaintiff has stated that he has no basis for saying that any of the jurors did anything which caused him to be convicted. (Bourke Dep., at 161-62).  This, therefore, demonstrates that plaintiff's claim is insufficient as a matter of law in that he cannot establish the proximate cause element of a legal malpractice action.

6411766v1 893190 53471

Moreover, Mr. Thomas' opinion that "there is a *reasonable likelihood* that deficient performance of counsel resulted in the guilty verdict because, as the Appellate Court found, the evidence strongly supported Mr. Bourke's position," falls short of the threshold foundation necessary for admissibility of his opinion. (Thomas Report, at 5) (Emphasis added). Mr. Thomas has not stated that to a *reasonable degree of legal certainty* that the purported inadequate jury selection caused the plaintiff any harm, in the *but for* world. *See Merritt v. Hopkins Goldenberg, P.C.*, 362 Ill.App.3d 902, 841 N.E.2d 1003 (5th Dist. 2005) (the plaintiff's expert provided no basis for his claim that the value of the underlying case was greater than the settlement amount, and therefore failed to sufficiently establish proximate cause to sustain the jury's verdict). In fact, Mr. Thomas stated that he does not know if a peremptory challenge was exercised to excuse a juror that was empanelled if the next juror would have been a more fit juror than the one excused. (Thomas Dep., at 74-75).

For the above reasons, plaintiff's claims fail on both the legal and factual, *but for* causation grounds.

2.   **PLAINTIFF'S CLAIMS OF MALPRACTICE ARE SPECULATIVE AS A MATTER OF LAW.**

Brucar and Conger are also entitled to summary judgment because Bourke's malpractice claims are speculative as a matter of law. The existence of actual damages is essential to a cause of action for legal malpractice. *Nettleton v. Stogsdill*, 2008 WL 5412853 at *3 (2d Dist. 2008) citing *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 26, 856 N.E.2d 389 (2006), *see also Jones Motor Co., Inc. v. Holtkamp, Liese, Beckemeier & Childress, P.C.*, 197 F.3d 1190 (7th Cir. 1999)(quoted note 12, p.15, infra). Actual damages in a legal malpractice case are not presumed; a plaintiff must plead and prove that she has suffered injuries resulting from the defendant attorney's alleged malpractice. *Nettleton*, 2008 WL 5412853 at *3. Even if

19

negligence on the part of the defendant attorney is proven, a plaintiff cannot recover for legal malpractice unless she also proves that the attorney's negligence proximately caused her damages. *Nettleton*, 2008 WL 5412853 at *3, citing *Tri-G*, 222 Ill.2d at 226, 856 N.E.2d 389. A breach of the standard of care cannot be established by mere speculation or conjecture and must be based upon recoverable damages that are actually incurred. *Glass v. Pitler*, 276 Ill.App.3d 344, 349, 657 N.E.2d 1075, 1079 (1st Dist. 1995); *O'Brien & Associates, P.C. v. Tim Thompson, Inc.*, 274 Ill.App.3d 472, 653 N.E.2d 956 (2d Dist. 1995); *Farm Credit Bank of St. Louis v. Gamble*, 197 Ill.App.3d 101, 103-04, 554 N.E.2d 779, 780-81 (3d Dist. 1990); *Shehade v. Gerson*, 148 Ill.App.3d 1026, 1031, 500 N.E.2d 510, 514 (1st Dist. 1986).

The Illinois Supreme Court weighed in this area when it held that the fact that an entire panel of jurors was examined, accepted and sworn in a single morning when a defendant was convicted of burglary does not establish incompetency of counsel. *People v. Hannon*, 48 Ill.2d 462, 466, 273 N.E.2d 9, 11 (1971). In *Hannon*, the court further noted that the criminal defendant asserting an ineffective assistance of counsel case because of a quickly selected jury was ***"the purest form of conjecture, and under no circumstances can conjecture constitute the sole basis for a claim of prejudice."*** *Hannon*, 48 Ill.2d at 466, 273 N.E.2d at 11 (Emphasis added).

Bourke's claim here is similar to the type of claim that was struck down in *Hannon*; one based purely on conjecture and speculation. Applying *Hannon*, Mr. Thomas' opinion of malpractice for the failure to use peremptory challenges and/or the failure to ask more questions during *voir dire* is purely conjectural, thus inadmissible. Factually, Bourke too has speculated, at most, there *could have been* a different outcome if there was a different jury selected. (Bourke Dep., at 159-62).

20

Further, Mr. Thomas criticizes the selection of only *two jurors* by defense counsel. Those two jurors were Juror No. 9 – Mr. Ray and Juror No. 193 – Miss Saeed. (Thomas Report, at 4). During the trial, Juror No. 193 – Miss Saeed was excused from the jury and did not participate in the unanimous guilty verdict. (Report of Proceedings of April 21, 199, at 3-9). Therefore, plaintiff's theory of an "irrational" jury necessarily must be trained on Juror No. 9. However, neither Bourke nor his expert has provided any supporting facts how the failure to ask Juror No. 9 more questions during *voir dire* and/or the failure to strike Juror No. 9 after the *voir dire* in any way could have changed the jury's unanimous guilty verdict. Further there are no facts or evidence that support the claim that Juror No. 9 acted irrationally at all. In fact, Mr. Thomas has not stated that if any potential juror was excused in this case that the next person brought upon the jury would have been a more fit juror than the one that was just excused. (Thomas Dep., at 74-75). Mr. Thomas engages in "the purest form of conjecture." No one has suggested any palpable defect in Juror No. 9. (See Bourke "fence leaners" testimony, p. 4, infra.) Summary judgment is appropriate.

### 3.    PLAINTIFF HAS ABANDONED HIS OTHER GROUNDS FOR LEGAL MALPRACTICE.

In his Complaint, Bourke alleges that (1) Brucar and Conger failed to confer with and present testimony from a crime scene expert; (2) Brucar and Conger failed to recognize that a tape recording produced by the prosecution contained gaps of apparent erasures that excluded material that would have be helpful to the defense case; and (3) Brucar and Conger conducted the trial in an incompetent manner in failing to exercise reasonable professional judgment during jury selection, in failing to object to admission of unfairly prejudicial photographs, and in failing to make any objection to the use of a tape recording that contained apparent erasures that

6411766v1 893190 53471

excluded material that would have persuaded the jury to find plaintiff not guilty.  (Complaint, ¶ 13)(Docket #1).

His attorney-expert's opinion is critical of the *voir dire* and the jury selection only. (Thomas Dep., at 9, 94-95).  Plaintiff has chosen his theory of the malpractice claim (*i.e.*, Brucar and Conger purportedly committed malpractice in the selection of the jury that convicted Bourke) and has effectively abandoned all of his other claims of error.

An action against attorneys for professional negligence, as in actions against physicians, the applicable standard of care and breach thereof must generally be established by expert testimony. *Bonhiver v. Rotenberg, Schwartzman & Richards*, 461 F.2d 925, 928 (7th Cir. 1972); *Barth v. Reagan*, 139 Ill.2d 399, 407, 564 N.E.2d 1196, 1200 (1990); *Besco v. Henslee, Monek & Henslee*, 297 Ill.App.3d 778, 783, 701 N.E.2d 1126 (3d Dist. 1998); *York v. Stiefel*, 109 Ill.App.3d 342, 349-50, 440 N.E.2d 440, 446 (3d Dist. 1982), *aff'd in part and rev'd in part*, 99 Ill.2d 312, 458 N.E.2d 488 (1983); *see also Merritt v. Hopkins Goldenberg, P.C.*, 362 Ill.App.3d 902, 841 N.E.2d 1003 (5th Dist. 2005) (the plaintiff's expert provided no basis for his claim that the value of the underlying case was greater than the settlement amount, and therefore failed to sufficiently establish proximate cause to sustain the jury's verdict).  Further, it is improper for a legal malpractice plaintiff to recite a "laundry list" of the attorneys' alleged deficiencies without connecting the alleged conduct to any damages proximately caused by the attorney's alleged actions.  *See, e.g., Claire Assoc. v. Pontikes*, 151 Ill.App.3d 116, 502 N.E.2d 1186, 1192 (1st Dist. 1986).  In sum, opinion testimony from a "qualified expert" is crucial to establish a breach of duty and causation. See, I.P.I. Civil No. 105.01

Here, plaintiff has disclosed an opinion on jury selection; that the "performance of defense counsel during the selection of the jury in *People v. Bourke*, 98 CF 741, did not meet the

6411766v1 893190 53471

standard of care reasonably to be expected from criminal defense counsel in 1999." (Thomas Report, at 5). Because plaintiff has provided a singular opinion, he is precluded from trying his "laundry list" of allegations from this point forward. Defendants, therefore, are entitled to summary judgment on all other alleged malpractice errors not related to deficient jury selection.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, defendants Wayne E. Brucar and Nathan Scott Conger respectfully request that this Court grant their Motion and enter judgment in their favor and against plaintiff, David Bourke, on all claims and causes of action.

Respectfully submitted,

WAYNE E. BRUCAR AND N. SCOTT CONGER

By:        s/Thomas P. McGarry
           Thomas P. McGarry

Thomas P. McGarry
Renée Kelly
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000

6411766v1 893190 53471

TABLE OF CONTENTS

I.      INTRODUCTION AND STATEMENT OF FACTS ................................................1

II.     LEGAL STANDARD ................................................................................7

III.    ARGUMENT ..............................................................................................8

        1.      THE EXERCISE OF PROFESSIONAL JUDGMENT DURING JURY SELECTION
                CANNOT BE ACTIONABLE MALPRACTICE OR THE PROXIMATE CAUSE
                OF PLAINTIFF'S LOSS AS A MATTER OF LAW AND AS A MATTER OF
                PUBLIC POLICY. .................................................................................8

                a.      Illinois law and public policy demand that an attorney shall
                        not be held liable for his exercise of professional judgment in
                        selecting a jury. ...................................................................11

                b.      As a matter of law, defendants' alleged acts and/or omissions
                        cannot be the proximate cause of plaintiff's purported injuries.........17

        2.      PLAINTIFF'S CLAIMS OF MALPRACTICE ARE SPECULATIVE AS A
                MATTER OF LAW........................................................................19

        3.      PLAINTIFF HAS ABANDONED HIS OTHER GROUNDS FOR LEGAL
                MALPRACTICE.........................................................................21

IV.     CONCLUSION .........................................................................................23

# TABLE OF AUTHORITIES

Fed. R. Civ. P. 56(c)........................................................................ 1, 7

*People v. Bourke,* No. 2-99-0924 (Ill. App. Ct. Aug. 21, 2001)...........................2, 22

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429 (7th Cir. 1993)........ 2

*Henson v. CSC Credit Servcs.,* 29 F.3d 280 (7th Cir. 1994)............................. 2

*Mintz v. Mathers Fund, Inc.,* 463 F.2d 495 (7th Cir. 1972)........................... 8

*Tri-G, Inc. v. Burke, Bosselman & Weaver,* 222 Ill.2d 218, 856 N.E.2d 389 (2006).........8, 9, 19

*Kramer v. Dirksen,* 296 Ill. App. 3d 819, 695 N.E.2d 1288, 231 Ill. Dec. 1699
(1st Dist. 1998)................................................................. 9

*Sheppard v. Krol,* 218 Ill.App.3d 254, 578 N.E.2d 212 (1st Dist. 1991) .................. 9

*Claire Assoc. v. Pontikes,* 151 Ill.App.3d 116, 502 N.E.2d 1186 (1st Dist. 1986) ................9, 22

*Goldstein v. Lustig,* 154 Ill.App.3d 595, 507 N.E.2d 164 (1st Dist. 1987).................. 9

*Bronstein v. Kalcheim & Kalcheim, Ltd.,* 90 Ill.App.3d 957, 414 N.E.2d 96
(1st Dist. 1980)................................................................ 9

*Winniczek v. Nagelberg,* 394 F.3d 505 (7th Cir. 2005)................................. 9

*Praxair Inc. v. Hinshaw & Culbertson,* 235 F.3d 1028 (7th Cir. 2000) ................ 9

*People v. Begay,* 377 Ill.App.3d 417, 879 N.E.2d 962 (1st Dist. 2007).................... 9

*People v. Lopez,* 371 Ill.App.3d 920, 864 N.E.2d 726 (1st Dist. 2007) .................. 10

*People v. Powell,* 355 Ill.App.3d 124, 822 N.E.2d 131 (1st Dist. 2004)................... 10

*People v. Bowman,* 325 Ill.App.3d 411, 758 N.E.2d 408 (1st Dist. 2001) ................ 10

*People v. Miles,* 176 Ill.App.3d 758, 531 N.E.2d 891 (1st Dist. 1988)................... 10

*People v. Furdge,* 332 Ill.App.3d 1019, 774 N.E.2d 415 (1st Dist. 2002) ...........11,12

*Goldstein v. Lustig,* 154 Ill.App.3d 595, 507 N.E.2d 164 (1st Dist. 1987)................ 12

*York v. Steifel,* 109 Ill.App.3d 342, 440 N.E.2d 440 (1982), *aff'd in part and rev'd
in part,* 99 Ill.2d 312, 458 N.E.2d 488 (1983) .........................................12, 22

2

*United States v. Boyd*, 86 F.3d 719 (7th Cir. 1996) ................................................................. 12

Hans Zeisel & Shari Seidman Diamond, *The Effect of Peremptory Challenges on Jury and Verdict: An Experiment in a Federal District Court*, 30 Stan.L.Rev. 491 (1978)................................................................. 12

*Woodruff v. Tomlin*, 616 F.2d 924 (6th Cir. 1980) ................................................................. 14

*Jones Motor Co., Inc. v. Holtkamp, Liese, Beckmeier & Childress, P.C.*, 197 F.3d 1190 (7th Cir. 1999) .............................................................. 15, 19

*National Union Fire Insurance Co. v. Dowd & Dowd P.C.*, No. 97 C 6200, (N.D.Ill. Nov. 9, 2000) ........................................................ 15

*National Union Fire Insurance Co. v. Dowd & Dowd P.C.*, 2 F.Supp.2d 1013 (1998), motion denied; 191 F.R.D. 566 (1999), overruled, No. 97 C 6200, 1999 U.S.D. LEXIS 19857 (N.D. Ill. Dec. 23, 1999) ........................... 15-16

*Transcraft, Inc. v. Galvin, Stalmack, Kirshner & Clark*, 39 F. 3d 812 (7th Cir. 1994).......................................................... 16

*Ballard v. Citizens Casualty Co. of N.Y.*, 196 F.2d 96 (7th Cir. 1952)...................................... 17

U.S. Const. Amend. VI ................................................................. 17

*United States v. Delatorre*, 572 F.Supp.2d 967 (N.D. Ill. 2008)............................................. 18

*Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) ............................... 18

*Gray v. Mississippi*, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987) .......................... 18

*Merritt v. Hopkins Goldenberg, P.C.*, 362 Ill.App.3d 902, 841 N.E.2d 1003 (5th Dist. 2005) ............................................................ 19, 22

*Nettleton v. Stogsdill*, 2008 WL 5412853 (2d Dist. 2008)................................................ 19, 20

*Glass v. Pitler*, 276 Ill.App.3d 344, 657 N.E.2d 1075 (1st Dist. 1995).................................... 20

*O'Brien & Associates, P.C. v. Tim Thompson, Inc.*, 274 Ill.App.3d 472, 653 N.E.2d 956 (2d Dist. 1995).................................................. 20

*Farm Credit Bank of St. Louis v. Gamble*, 197 Ill.App.3d 101, 554 N.E.2d 779 (3d Dist. 1990)........................................................ 20

*Shehade v. Gerson*, 148 Ill.App.3d 1026, 500 N.E.2d 510 (1st Dist. 1986) ............................ 20

*People v. Hannon*, 48 Ill.2d 462, 273 N.E.2d 9 (1971) ........................................................ 20

*Bonhiver v. Rotenberg, Schwartzman & Richards*, 461 F.2d 925 (7th Cir. 1972).................... 22

3

6411766v1 893190 53471

*Barth v. Reagan*, 139 Ill.2d 399, 564 N.E.2d 1196 (1990) ...................................................... 22

*Besco v. Henslee, Monek & Henslee*, 297 Ill.App.3d 778, 701 N.E.2d 1126
    (3d Dist. 1998)........................................................................................................ 22

*York v. Stiefel*, 109 Ill.App.3d 342, 440 N.E.2d 440 (3d Dist. 1982), *aff'd in part
    and rev'd in part*, 99 Ill.2d 312, 458 N.E.2d 488 (1983)............................................. 22

4