# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| David Bourke, | )<br>) |
| *Plaintiff,* | )<br>) |
| | ) No. 03 CV 7749 |
| -vs- | )<br>) |
| | ) *(Judge Zagel)* |
| Village of Downers Grove, Illinois,<br>et al., | )<br>)<br>)<br>) |
| *Defendants.* | ) |

## NOTICE OF SERVICE OF EXPERT REPORT

TO: James L. DeAno, Esq.
Deano & Scarry LLC
2100 Manchester Rd., Ste A-101
Wheaton, IL 60187-4579

Thomas P. McGarry, Esq.
Hinshaw & Culbertson
Chicago, IL 60602

You are hereby served with a copy of expert report of David Thomas.

/s/ Kenneth N. Flaxman

---

KENNETH N. FLAXMAN
ARDC No. 830399
200 South Michigan Avenue
Suite 1240
Chicago, Illinois 60604-2430

(312) 427-3200 (phone)
(312) 427-3930 (fax)
knf@kenlaw.com

*attorney for plaintiff*

LAW OFFICES
# DAVID C. THOMAS
651 WEST WASHINGTON
SUITE 205
CHICAGO, ILLINOIS 60661
TELEPHONE (312) 917-8888
FACSIMILE (312) 781-9401

Mr. Kenneth Flaxman
Law Offices of Kenneth N. Flaxman
200 S. Michigan Ave,
Suite 1240
Chicago, Il. 60604

October 22, 2008

Re: Bourke v. Village of
Downers Grove,
03C7749 (N.D. Il.)

Dear Mr. Flaxman:

You have requested that I render an opinion regarding the adequacy of the voir dire of potential jurors conducted by defense counsel in People v. David P. Bourke, 98 CF 741 (Circuit Court of Du Page County, Il), measured against the standard of care reasonably to be expected from criminal defense counsel in 1999.

Materials Reviewed

1. Rule 23 Order of the Appellate Court of Illinois, Second District, in People v. Bourke, 2-99-0924, consisting of 46 pages.

2. Report of Proceedings dated April 20, 1999, in People v. Bourke, 98 CF 741, before the Honorable George J. Bakalis, consisting of 123 pages.

Qualifications and Compensation

My qualifications are set forth in the Cirriculum Vitae attached hereto and incorporated herein by reference. I am being compensated at the rate of $250/hr. To date I have spent 7.50 hours reviewing the material, and researching and writing this report.

Opinions

It is impossible to overstate the importance of the questioning of potential jurors in a criminal case, particularly one in which an affirmative defense such as self-defense is being presented. There are three recognized functions of voir dire:

> 1) To elicit information which would establish a basis for a challenge for cause because the juror cannot be fair and impartial;
>
> 2) To acquire information to afford an intelligent exercise of peremptory challenges; and
>
> 3) To prevent juror "misconduct" by ensuring that the jurors do not misrepresent their qualifications.

Karnisar, et. al., Modern Criminal Procedure 1368, 1372, (12th ed. 2008).

An informal, but still vitally important, function is that of "indoctrinating the potential jurors on the merits of the case and developing rapport" with the jurors. Comment, 70 Calif. L. Rev. 708, 714 (1982). "In examining prospective jurors, lawyers and judges probe their attitudes and practices—asking, for example, about the juror's religious beliefs, drinking habits, jobs, hobbies, and prior experience with lawyers, then asking about their relatives' jobs, experience as crime victims, and arrest records as well." Alschuler, Albert W., "The Supreme Court and the Jury: Voir Dire, Peremptory Challenges and the Review of Jury Verdicts", 56 U. Chi. L Rev. 153, 158 (1989).

In Illinois the importance of active, direct attorney participation in the questioning process is reflected in Supreme Court Rule 234, which provides in relevant part that the court "shall permit the parties to supplement [its] examination by such direct inquiry as the court deems proper." (emphasis added). A defendant in a non-capital felony case is allowed 7 peremptory challenges. Of course, there is no limit on challenges for cause.

The voir dire conducted by Mr. Bourke's attorneys did not fulfill any of the functions outlined above, primarily because of its brevity coupled with the superficiality of what little there was. The entire voir dire by the defense of the 14 empaneled jurors consists of only 20 pages of transcript; it cannot have lasted much more than 10 minutes in total. This is not to say that the quality of a voir dire necessarily depends upon its length, but it is simply not possible to do an adequate job in a murder case involving self-defense with such a minimal effort.

Moreover, most of that brief time was wasted due to the superficial nature of the questions asked. Remarkably, not one juror was asked a single factual question about his or her background. This is particularly significant because the case was tried in DuPage County, a culturally and politically conservative community. There was no probing of the experience or attitudes of potential jurors even though # 9, for example, was clearly bothered that Mr. Bourke kept a gun in his room. ( Transcript at 55). Although counsel later rehabilitated the hesitant man by asking leading questions, counsel never explored with the juror why he had this attitude and what experiences contributed to it. Without this information, there is no way to judge the worth of the juror's later responses to leading questions. ( Id. at 60). Another example would be juror #193. Although she was later excused during the trial for other reasons, she quite frankly stated more than once that the violent nature of the offense charged made it more likely that she would find Mr. Bourke guilty than if he were charged with a non-violent offense. ( Id. at 49). Defense counsel never even rehabilitated her on this issue, let alone find out the basis for her prejudice.

Entire areas relevant to the case were not even broached. The best example is the subject of the excessive consumption of alcohol, which played a major role in the alleged offense. This is a subject on which most (if not all) persons would have strong views and /or some type of experience, which would be important factors in the way they view the case. Yet counsel did not ask a single juror even one question on this subject.

The few questions that were asked (right to self-defense, guns in the house, etc.) were posed solely in the abstract and in a leading form designed to elicit the "correct" answer. None were asked in an open-ended fashion, so none of these issues were explored in terms of the jurors' experiences and honest feelings.

In sum, at the conclusion of the defense <u>voir dire</u>, defense counsel did not know anything more about the jurors than they did beforehand. Thus, it is not surprising that they did not make any challenges for cause because they did not make any effort to elicit facts which would provide a basis for such a challenge. However, even with the paucity of information, it is inexplicable that they would not make any peremptory challenges. Jurors 193 and 9 would be obvious candidates. In 35 years of selecting juries in both criminal and civil cases, there has never been a case where I did not make a single challenge. To analogize to a poker hand, while it is theoretically possible to be dealt a royal flush, the odds against it are astronomical. In the real world, it is always possible to improve your hand.

In the final analysis, perhaps the best indicator of the deficiency of counsel's performance in jury selection is the fact that the Appellate Court reversed the conviction outright. As stated in its Order, the exacting standard for such a dramatic outcome is

"whether <u>any rational trier of fact</u> could have found the essential elements beyond a reasonable doubt." (Rule 23 Order at 30). (emphasis added) In reversing Mr. Bourke's conviction, the Appellate Court necessarily found that the jurors accepted by defense counsel without challenge did not function in a rational manner. This is the most basic protection <u>voir dire</u> is intended to provide but that did not happen here because of the deficient performance by defense counsel.

     For the reasons stated above, it is my opinion that the performance of defense counsel during the selection of the jury in <u>People v. Bourke</u>, 98CF 741, did not meet the standard of care reasonably to be expected from criminal defense counsel in 1999. It is also my opinion that there is a reasonable likelihood the deficient performance of counsel resulted in the guilty verdict because, as the Appellate Court found, the evidence strongly supported Mr. Bourke's position.

                                           Yours very truly,

                                           *David C. Thomas*
                                           David C. Thomas

# CIRRICULAM VITAE

**DAVID C. THOMAS**
651 W. Washington Suite 205
Chicago, IL 60661    Telephone: (312) 917-8888  Fax: (312) 781-9401
Dthomas@kentlaw.edu

## EDUCATION

### UNDERGRADUATE EDUCATION

    Kenyon College        Dates of Attendance: 1961-1965
    Gambier, Ohio
    Degree: A.B. in Political Science <u>Cum Laude</u> with honors in Political Science

### GRADUATE EDUCATION

    University of Michigan Law School   Dates of Attendance: 1965-1968
    Ann Arbor, Michigan
    Degree: J.D.

## EXPERIENCE

Law Offices of David C. Thomas    2006-Present
651 W. Washington, Suite 205
Chicago, IL 60611

Attorney at Law
Clinical Professor    1979-2006
IIT Chicago-Kent College of Law
565 West Adams Street, Suite 600
Chicago, IL 60661

Clark, Thomas & Piers    1975-1978
Partner
343 South Dearborn
Chicago, IL 60604

Woodlawn Criminal Defense Services    1972-1975
Director
950 East 61st Street
Chicago, IL 60637

Edwin F. Mandel Legal Aid Clinic    1970-1972
Assistant Director and Clinical Fellow
University of Chicago Law School
6020 South University
Chicago IL 60637

Samuel H. Young Law Offices     1968-1970
Associate
135 South La Salle, Suite 3705
Chicago, IL 60601

**EXPERT WITNESS**

Srnieszkal v. Akers, 05 C 6232 (N.D.Il.)

Crudup v. Barton, 98 C 1498 (N.D.Il.)

People v. Tiedje, 98 CF 1463 (Circuit Court of Lake County, Il.)

**BAR MEMBERSHIPS**

States:
   Illinois 1968
   California 1990

Federal:
   United States Supreme Court: 1985
   Seventh Circuit Court of Appeals: 1972
   United States District Court, Northern District of Illinois
      General Bar: 1968
      Trial Bar: 1982 (at its inception)
   United States District Court, Eastern District of Michigan: 1983

United States District Court, Western District of Michigan
      Pro hace vice -1991
United States District Court, Southern District of Texas
      Pro hace vice -1987
United States District Court, Southern District of Arizona
      Pro hace vice -1984

**PROFESSIONAL MEMBERSHIPS**

   American Bar Association
   National Association of Criminal Defense Lawyers
   Chicago Council of Lawyers
   National Lawyer's Guild

**TEACHING**

1. Clinical Professor of Law: Criminal Procedure and Trial Practice
   IIT Chicago-Kent College of Law, 1979 to 2006

2. Chicago Bar Association
   Instructor, Young Lawyers Section-Training for Federal Trial Bar, November 1999

3. Visiting Professor, Lawyering Skills II and Advanced Trial Techniques, University of San Diego Law School, January-May 1991

4. Clinical Instructor for second and third year (711) law students from the University of Chicago at both Mandel Legal Aid Clinic (1970-1972) and Woodlawn Criminal Defense Services (1972-1975)

5. Instructor in trial practice course for second year students at the University of Chicago Law School from 1971 to 1975

6. Visiting Instructor at DePaul Law School in Fall, 1978

**PUBLICATIONS**

Rudstein, Erlinder & Thomas, Criminal Constitutional Law, (Matthew Bender, 1990).

Erlinder & Thomas, "Prohibiting Prosecutorial Vindictivness While Protecting Prosecutorial Discretion: Toward A Principled Resolution Of A Due Process Dilemma," 76 Northwestern J. of Crim. Law & Criminology 341 (Spring, 1985)

Thomas & Kragie, "Attorney's Fees In Settlement of Civil Rights Cases: Facing Up To Conflict Of Interest Problems," Part I (July 1983) and Part II (September 1983) Vol. I *Police Misconduct & Civil Rights Law Report*, Nos. 2 & 3, Clark Boardman Company, Ltd.

**MISCELLANEOUS**

President and Chairman of the Board, The Sentencing Project, Washington, D. C., 1981-2006

Member of National Lawyer's Guild delegation to Japan sponsored by Japanese Lawyers for Freedom, October, 1999

Member of the Board of Directors of the Federal Bar Association 1998-1999

Arbitrator, Cook County Circuit Court Mediation Panel 1989-1992

Member of the Editorial Board, *Police Misconduct and Civil Rights Law Report*, 1983-1994

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing to be served on James L. DeAno, Esq., Deano & Scarry LLC, 2100 Manchester Rd., Ste A-101, Wheaton, IL 60187-4579, and Thomas P. McGarry, Esq. , Hinshaw & Culbertson, Chicago, IL 60602, by email, with confirmatory copy by first class mail, postage prepaid, this 22nd day of October, 2008.

/s/ Kenneth N. Flaxman
_____

KENNETH N. FLAXMAN
ARDC No. 830399
200 South Michigan Avenue
Suite 1240
Chicago, Illinois 60604-2430

(312) 427-3200 (phone)
(312) 427-3930 (fax)
knf@kenlaw.com

*attorney for plaintiff*