IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID BOURKE, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 03 CV 7749 |
| -*vs*- | ) | |
| | ) | *(Judge Zagel)* |
| THE VILLAGE OF DOWNERS | ) | |
| GROVE, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S RULE 56.1(b)(3) STATEMENT

Pursuant to Local Rule 56.1(b)(3), plaintiff submits the following

in response to the motion for summary judgment filed herein by

defendants Brucar and Conger:

> 1. Plaintiff, David Bourke ("Bourke"), filed his Complaint for a civil action arising under 42 U.S.C. § 1983 against police officers and other employees of the Village of Downers Grove for allegedly suppressing exculpatory evidence in a criminal homicide trial that resulted with a jury finding Bourke guilty of first degree murder.

Response: Agreed.

> 2. The jurisdiction of this Court is conferred by 28 U.S.C. § 1343.

Response: Agreed

> 3. In his Complaint, Bourke also asserted a supplemental state law claim of attorney malpractice against Defendants, Brucar and Conger pursuant to 28 U.S.C. § 1367.

Response: Agreed

4. Venue in this District is proper pursuant to 28 U.S.C. § 1391(a) because each defendant resides in this District and because a substantial part of the events or omissions giving rise to Bourke's claims occurred in this District.

Response: Agreed

5. On April 16, 1998, Bourke shot and killed a man named Roger Johnson within the Village of Downers Grove.

Response: Agreed

6. On April 16, 1998 Bourke was arrested and formally charged with murder.

Response: Agree that Bourke was arrested on April 16, 1998. Bourke was not formally charged with murder until he was arraigned on the grand jury indictment.

7. At all times relevant hereto, Brucar and Conger were attorneys licensed to practice law in the State of Illinois.

Response: Agreed as to Brucar, disputed as to Conger, who was suspended from practice on May 19, 2008 and who is not currently licensed to practice law in the State of Illinois. (Plaintiff's Exhibit 1, ARDC status report.)

8. Brucar and Conger were retained by Bourke to represent him at the criminal trial.

Response: Agreed

9. In the months and weeks leading up to the criminal trial, Brucar and Conger visited Bourke in jail and discussed the case with Bourke.

Response: Agreed

10. Bourke had a jury trial.

Response: Agreed


11. The criminal jury trial took place in DuPage County, Illinois with Honorable George J. Bakalis presiding over the matter.

Response: Agreed


12. At the criminal trial, Brucar and Conger presented the affirmative defenses of use of force in defense of person (720 ILCS 5/7-1 (West 1998)) and use of force in defense of a dwelling (720 ILCS 5/7-2 (West 1998)) on behalf of Bourke.

Response: Agreed

13. After the weeklong trial, Bourke was found guilty of first degree murder by a DuPage County jury and was sentenced to twenty-five (25) years in jail.

Response: Agreed

14. After the verdict, Brucar and Conger filed a Motion to Reconsider Sentence and a Motion for a New Trial; the trial court denied these motions.

Response: Agreed


15. Bourke appealed the trial court's decision through the Appellate Defender's Office arguing that (1) the State did not disprove his affirmative defenses and prove the elements of first degree murder beyond a reasonable doubt; (2) this court should reduce his conviction to second degree murder pursuant to Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)); and (3) his trial counsel provided ineffective assistance of counsel in failing to: (a) strike two prospective jurors, (b) bring a motion in limine to exclude certain photographs, a videotape of defendant's room, and recordings of conversations between a 911 call operator and defendant's father, and (c) object to certain of the State's remarks during its closing argument.

Response: Agreed

16. The Illinois Appellate Court reversed plaintiff☐s conviction on the ground that the State did not disprove plaintiff's self-defense claims beyond a reasonable doubt and therefore, the State did not prove Bourke guilty of first degree murder. (Exhibit A, Appellate Court Order at 1-2, 46).

Response: Agreed

17. The Illinois Appellate Court did not reach Bourke☐s other arguments that his conviction should have been reduced to second degree murder and/or that his trial counsel, Conger and Brucar were ineffective. (Exhibit A, Appellate Court Order at 46).

Response: Agreed

18. In his civil complaint here, Bourke has alleged the following claims for malpractice against Brucar and Conger: 13. Plaintiff was erroneously found guilty of murder as a result of one or more of the following acts of malpractice by defendants Conger and Bruchar [sic]:

> i. Defendants Conger and Bruchar [sic] failed to confer with and present testimony from a crime scene expert, who would have explained to these attorneys and the jury that the prosecution's theory of the of the case was based on what the Appellate Court subsequently characterized as a "highly fanciful reading of the evidence."

> ii. Defendants Conger and Bruchar [sic] failed to recognize that a tape recording produced by the prosecution contained gaps of apparent erasures that excluded material that would have been helpful to the defense case. Instead of raising any objection to the misleading tape, or even demanding an evidentiary hearing into its pedigree, defendants Conger and Bruchar [sic] stipulated to the admissibility of the tape.

> iii. Defendants Conger and Bruchar [sic] conducted the trial in an incompetent manner in failing to exercise reasonable professional judgment during jury selection, in failing to make any objection to the admission into evidence of unfairly prejudicial photographs, and in failing to make any objection to the use of a tape recording that contained apparent erasures

that excluded material that would have persuaded the jury to find plaintiff not guilty.

## Response: Agreed

19. Bourke has retained one expert in this matter relating to his legal malpractice claims, David C. Thomas; his opinion is in regard to the adequacy of the *voir dire* and jury selection by defense counsel in Bourke's criminal trial.

## Response: Agreed

20. On October 22, 2008, Mr. Thomas rendered an opinion regarding the adequacy of the *voir dire* of potential jurors conducted by defense counsel in *People v. David P. Bourke*, 98 CF 741 (Circuit Court of Du Page County, Illinois), measured against the standard of care reasonably to be expected from criminal defense counsel in 1999.

## Response: Agreed

21. In coming to his opinion, Mr. Thomas reviewed the following materials: (1) Rule 23 Order of the Appellate Court of Illinois, Second District, in People v. Bourke, 2-99-0924, consisting of 46 pages (hereto attached as Exhibit A) and (2) Report of Proceedings dated April 20, 1999, in *People v. Bourke*, 98 CF 741, before the Honorable George J. Bakalis, consisting of 123 pages (hereto attached as Exhibit E

## Response: Agreed

22. Thomas criticizes the (1) questions asked by Brucar and Conger during *voir dire* and (2) the failure to exercise any challenges for cause or peremptory challenges.

## Response: Agreed

23. More specifically, Thomas criticizes Brucar and Congers acts and/or omissions when questioning and the deciding to not use challenges on two listed jurors, Juror No. 9, Mr. Ray, and Juror No. 193, Miss Saeed.

## Response: Agreed

24. Mr. Thomas estimates that he had done less than five jury trials in DuPage prior to 1999; he has had none since 1999.

Response:  Agreed

25. The *voir dire* of potential jurors and the jury selection for the criminal trial took place on April 20, 1999.

Response:  Agreed

26. During the *voir dire* of the potential jurors and jury selection, Bourke was present in the courtroom with Brucar and Conger.

Response:  Agreed

27. Bourke sat at the defense table with Brucar and Conger during the *voir dire*. (Exhibit F, Bourke Dep., at 151, Exhibit G, Brucar Dep., at 52-53; Exhibit H, Conger Dep., 95).

Response:  Agreed

28. The *voir dire* consisted of questions from the Court, from an Assistant State's Attorney, and from defense counsel Brucar.

Response:  Agreed

29. The State asked to excuse two jurors preemptively prior to any questions by Brucar and/or Conger.

Response:  Agreed

30. Likewise, before Brucar and Conger had an opportunity to ask any questions of the jurors, the State asked to strike a juror (Juror No. 193, Miss Saeed) for cause, but the trial court denied the request and the State made no further motion as to that juror.

Response:  Agreed

31. The trial court also asked two prospective jurors to step down during the court's *voir dire*.

Response:  Agreed

32. When questioning the jury for *voir dire* Brucar introduced the following areas/issues to Bourke's case: the case involved a self-defense, Bourke lived in a transient motel, there was a gun involved in the homicide, there was a violent death and that Bourke was the cause of that death.

Response:  Agreed

33. During questioning, one prospective male juror expressed concerns about firearms.

Response:  Agreed

34. The juror that expressed concerns about firearms was Juror No. 9, Mr. Ray; a man who was a chemist.

Response:  Agreed

35. Another juror (Juror No. 193 - Miss Saeed) had some difficulty speaking and understanding English.

Response:  Agreed

36. Bourke, Brucar and Conger all discussed and consulted prior to accepting and empanelling the jurors.

Response:  Agreed

37. Brucar and Conger consulted with Bourke and decided to not exercise any peremptory challenges to strike any prospective jurors.

Response:  Agreed

38. Brucar and Conger exercised professional judgment as counsel in determining which questions to ask which potential jurors and which jurors to not exercise challenges against.

Response:  Disputed.  Report of David Thomas, submitted by defendants as their Exhibit C.

39. After the complete *voir dire* of the prospective jurors by all parties, the defense accepted the two (2) panels of six (6) jurors that were placed in front of them.

Response:  Agreed

40.  The  first  two  (2)  alternative  jurors  that  were
questioned were also accepted by all parties.

Response:  Agreed

41. During the trial, one juror (Juror No. 193, Miss Saeed)
was excused and an alternate female juror (Juror No. 177,
Lipponeur) was empanelled.

Response:  Agreed

42. During jury deliberations, Juror No. 9, Mr. Ray became
the foreman of the jury.

Response:  Agreed

43. Bourke  has  not  alleged  that  Mr.  Ray  did  anything
improper while serving on the jury.

Response:  Agreed


44. Bourke has not alleged that any juror acted improperly
in serving on the jury.

Response:  Agreed

45. Bourke  does  not  know  what  result  would  have  occurred
had  any  of  the  jurors  not  been  selected  to  serve  on  the
jury.

Response:  Agreed

46. Judge Bakalis denied Bourke's Motion for a New Trial
stating "I don't [sic] feel there is any basis for me to
usurp the jury's finding of fact in this case, therefore
the motion is denied."

Response:  Agreed

## PLAINTIFF'S ADDITIONAL UNDISPUTED FACTS

1.     Plaintiff was initially represented by the DuPage County Public Defender; defendant Conger was the assistant Public Defender assigned to the case.  (Bourke Dep. 135, filed as Defendants' Exhibit F.)

2.     Conger left the Public Defender's office in 1999 and entered into a partnership with defendant Brucar. (Bourke Dep. 137–38, filed as Defendants' Exhibit F.)

3.     Shortly after leaving the Public Defender's office, Conger solicited plaintiff as a client — as plaintiff testified at his deposition, "Scott Conger came to see me and told that for five grand him and his new partner would take care of me, but he said I had to request it because if I didn't it would like he did something illegal." (Bourke Dep. 138, filed by defendants as Exhibit F.)

4.      Following the imposition of sentence on July 15, 1999, plaintiff was confined in the penitentiary until September 13, 2001 when, following the Appellate Court reversal, he was released on appeal bond. (Bourke Answers to Interrogatories, attached as Exhibit 2.)

Respectfully submitted,


/s/ Kenneth N. Flaxman
Kenneth N. Flaxman
ARDC #830399
200 S Michigan Ave, Ste 1240
Chicago, IL 60604
(312) 427-3200
*Attorney for Plaintiff*

**Exhibit 1**



### WEBSITE INFORMATION | SEARCH SITE | HOME

Lawyer Search

Lawyer Registration

How to Submit a Request For Investigation

Rules and Decisions

Ethics Inquiry Program

Publications

New Filings, Hearing Schedules and Clerk's Office

Client Protection Program

Resources & Links

ARDC Organizational Information

## *LAWYER SEARCH: ATTORNEY'S REGISTRATION AND PUBLIC DISCIPLINARY RECORD*

ARDC Individual Attorney Record of Public Registration and Public Disciplinary and Disability Information as of March 13, 2009 at 11:39:04 AM:

| | |
|---|---|
| **Full Licensed Name:** | Nathan Scott Conger |
| **Full Former name(s):** | None |
| **Date of Admission as Lawyer by Illinois Supreme Court:** | November 7, 1985 |
| **Registered Business Address:** | Law Office of N. Scott Conger<br>6912 Main St., Suite 123<br>Downers Grove, IL 60516-3440 |
| **Registered Business Phone:** | (630) 606-6200 |
| **Illinois Registration Status:** | Not authorized to practice law due to discipline and has not demonstrated required MCLE compliance |
| **Malpractice Insurance:** (Current as of date of registration; consult attorney for further information) | No malpractice report received as attorney is not registered. |

**Public Record of Discipline and Pending Proceedings:**

Case(s) below are identified by caption and Commission case number. If there is more than one case, the cases are listed in an order from most recent to oldest. A case may have more than one disposition or more than one component to a disposition, in which situation each disposition and component is also listed separately within that case record, again in an order from most recent to oldest.

Click on R & D to access any documents regarding this lawyer that are in Rules and Decisions. R & D contains all disciplinary opinions of the Supreme Court and most other Court orders and board reports issued since 1990. If R & D does not contain the decision that you are seeking, contact the Commission's Clerk's office for assistance. Contact information for the Clerk's office is available at Office Hours.

**In re Nathan Scott Conger, 07CH0053**

Disposition:                     Suspension for a specified period

Effective Date of               May 19, 2008
Disposition:

End Date of Disposition:

Case 1:03-cv-07749   Document 63   Filed 03/16/09   Page 13 of 24

Definition of Disposition:     Suspension for a specified period reflects a determination that the lawyer has engaged in misconduct and that the misconduct warrants an interruption of the lawyer's authority to practice law during the suspension period, which is a fixed period of time identified in the Supreme Court's order. The lawyer is not authorized to practice law during the period of the suspension.

Check carefully to be sure that you have selected the correct lawyer. At times, lawyers have similar names. The disciplinary results displayed above include information related to any and all public discipline, court-ordered disability inactive status, reinstatement and restoration dispositions, and pending public proceedings. Investigations are confidential and information related to the existence or status of any investigation is not available. For additional information regarding data on this website, contact ARDC at (312) 565-2600 or, within Illinois, at (800) 826-8625.

ARDC makes every effort to maintain the currency and accuracy of Lawyer Search. If you find any typographical errors in the Lawyer Search information, please email lawyersearch@iardc.org. For substantive changes to registration information, including status, address, telephone or employer information, we require that the attorney submit a Change of Registration to insure the validity of the registration process. Consult our Change of Attorney's Registration page for details. Name changes require the filing of a motion with the Supreme Court. Consult our Attorney's Request for Name Change page for details.

Return to Search

**IARDC ®:online access to registration and discipline information regarding Illinois lawyers presented by the Illinois Attorney Registration & Disciplinary Commission.**

Lawyer Search | Lawyer Registration | How to Submit a Request For Investigation
Rules and Decisions | Ethics Inquiry Program | Publications
New Filings, Hearing Schedules and Clerk's Office | Client Protection Program
Resources & Links | ARDC Organizational Information
Website Information | Search Site | Home

Plaintiff's Exhibit 1                                         Page 2

**Exhibit 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| David Bourke, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 03 CV 7749 |
| -vs- | ) | |
| | ) | *(Judge Zagel)* |
| Village of Downers Grove, Illinois, | ) | |
| et al., | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S INTERROGATORY ANSWERS

Contention:    1. Please state your name, address, date of birth and Social Security number.

Response: David Pierce Bourke, 1▮▮Ogden Avenue, Apt 5, Downers Grove, IL 60515, ▮▮/56, ▮▮▮3.

Contention:    2. Describe in detail all injuries sustained by you as a result of said occurrence.

Response: I was incarcerated from April 17, 1998 until September 13, 2001. During this period, I was separated from my family and loved one. I was unable to work. (I was called back to work by United Parcel about two weeks after I was arrested. I was unable to accept this position because I was incarcerated. After my release, I sought to be rehired by United Parcel, but I was turned down because the murder arrest and conviction was still on my record.) I was subjected to extreme emotional distress because of the arrest and prosecution. While in prison, I was assaulted, beaten, wrongfully and placed into segregated confinement. I have suffered permanent damage to my

relationships with friends and family.  After my release from incarceration, I was unable to find work because the murder arrest and conviction was still on my record.  Although my record has not been expunged, I was unable to explain the gap in my employment history and I have been to date been unable to find employment.

Contention:    3. If, as a result of the injuries described in Interrogatory No. 2 you received medical care or treatment, state:

    a. the names and addresses of all doctors who treated or examined you;

    b. the names and addresses of all hospitals or institutions in which you have received care or treatment, and the respective dates of confinement in said hospitals or institutions;

    c. an itemized list of the expenses incurred for medical care and treatment; and

    d. the date you were last treated or examined by any of the doctors, or received treatments in any of the hospitals or institutions listed in answer to Interrogatory No. 3(a) and 3(b).

Response: At the DuPage County jail, I received out-patient psychiatric care from Dr. James Corcoran. When I was at the Illinois Department of Corrections, I received psychiatric care while at Joliet, Stateville, Menard, and Dixon penitentiaries. ' Following my release from the penitentiary, I saw Dr. Corcoran on one occasion who concluded that I no longer needed medication or out-patient psychotherapy.  Dr. Cocoran billed me about seventy five dollars for that visit.

Contention:    4. Since the time of said occurrence, have you been examined or treated by any doctor or doctors other than those listed in answer to Interrogatory No. 3 aforesaid. If so, state the name or names, addresses, and dates of such examination or treatment

Response: Following my release from the penitentiary, I have been treated by Dr. Allen for high blood pressure.

Contention:   5. Have you recovered from the injuries received in the occurrence? If not, describe your present condition as to said injuries from which you have not recovered.

Response: No.  I have painful recurring memories of being wrongfully arrested and prosecuted. I have sleep problems, bad dreams and I am often depressed.  I am often angry and I have bouts of sorrow.  I am often anxious and I am in constant fear that I will again be wrongfully arrested.  I have high blood pressure that I attribute to this incident.

Contention:   6. If, because of said occurrence, you were absent from work, please state:

   a.  where you were employed;

   b.  describe in what capacity you were employed at that time and the duration of that employment;

   c.  rate of pay at the time of the occurrence; and

   d.  if you were self-employed:

      1.  What was the name of your business;

      2.  How long were you so engaged;

      3.  What percentage of the business do you personally own;

      4.  How much of your time do you devote to said business; and

      5.  What were your personal gross earnings from said business for a two-year period prior to the occurrence?

Response: I was unemployed at the time of the incident, awaiting a callback from United Parcel Service.  I was called back to work by United Parcel about two weeks after I was arrested. I was unable to

accept this offer, which would have resulted in full time employment, because I was incarcerated. After my release, I sought to be rehired by United Parcel, but I was turned down because the murder arrest and conviction was still on my record.  I believe that I would still be employed by UPS but for the wrongful arrest and prosecution.

Contention:    7. Please state the dates and locations of your con-
               finement following your arrest referred to in your
               Complaint.

Response: I was confined at the DuPage County Jail for about fifteen months and then sent to the Joliet Correctional Center. I stayed there for about six days and I was then transferred to the Stateville Correctional Center. I was at Stateville for about four or five months and I was then transferred to Menard, where I remained for about a year until I was sent to Dixon in February of 2001.  I remained at Dixon until I was released on September 13, 2001.

Contention:    8. Please state each act or omission of each indivi-
               dual Defendant, and the Village of Downers Grove,
               which you believe caused you to be charged with
               murder and/or denied you your due process rights
               and/or resulted in an unfair trial.

Response: My investigation is continuing. At the present time, I believe that one or more of the Downers Grove police officer omitted favorable material from the communcations that was played at my trial. I also believe that one or more of the Downers Grove police officers moved a shell casing and a cigarette to be directly inside of the door of my motel room.

Contention:     9. State the names, present addresses, or last known
                addresses, of all persons who saw all or any part of
                said occurrence described in the Complaint and known
                to you or to your attorneys or agents.

Response: My investigation is continuing; I do not at present know the name of the person or persons who moved the evidence. Nor do I know the name of the person or persons who cut material out of the tape.

Contention:     10. State the name and address or last known address
                of all persons known to you or your attorneys or
                agents who have direct knowledge of the occurrence
                described in the Complaint.

Response: In addition to the defendants, Assistant Public Defenders Tom Ost and Elizabeth Reed and various assistant State's Attorneys have knowledge of the occurrence.

Contention:     11. If you have incurred any expenses other than
                those listed in the answers to Interrogatory Nos. 3
                and 4, please state:

                a. the amount of such expense;

                b. the purpose of such expense; and

                c. the name and address of the persons with whom
                   you incurred expenses.  ANSWER:

Response: My family paid five thousand dollars for my criminal defense. I incurred several thousand dollars in long distance collect calls from the penitentiary and from the DuPage county jail. I also incurred costs for "commissary" expenses at the penitentiary. I lost my car, clothing, and personal possessions as a result of my arrest and conviction.

Contention:       12. Have you made a claim for reimbursement against
                  any other person or corporation for any of the dam-
                  ages for which this action is brought? If so, state
                  the name and address of said person or corporation,
                  and the amount claimed. (This includes any claim
                  against your employer or on any policy of
                  insurance.)

Response: No.

Contention:       13. State the most recent date, prior to said
                  occurrence, when you were given a physical examina-
                  tion by a doctor of medicine, and specify the name
                  and address of such doctor and where the examination
                  took place.

Response: I received a DOT physical in September of 1997 from a doc-
tor engaged by United Parcel Service.  I  passed; my blood pressure
was fine.

Contention:       14. If you, your attorneys, agent or insurance com-
                  pany have taken a statement from the Defendants or
                  any person other than the Defendant concerning the
                  occurrence described in the Complaint, state:

                  a.  the name and address of the person taking each
                      such statement or statements;

                  b.  the name and address of each person giving the
                      statement; and

                  c.  when and where each such statement or state-
                      ments were taken.

Response: None.

Contention:       15. Have you, your attorneys, your insurance com-
                  pany, or anyone on your behalf obtained, or caused
                  to be obtained, any photographs, diagrams, video-
                  tapes or audiotapes relating to this occurrence? If
                  the answer is in the affirmative, please state the
                  date when such photographs, diagrams, videotapes or
                  audiotapes were taken, the place where they were
                  taken, and the name and address ofthe person or

persons who now have possession of the photographs,
diagrams, videotapes or audiotapes.

**Response: The trial exhibits are available for inspection.**

Contention:    16. Have you ever been convicted of a felony or
crime involving dishonesty or moral turpitude?

**Response: No.**

Contention:    17. State the full name, address, telephone number
and occupation or profession of each opinion witness
who will offer any opinion testimony at the trial of
this cause. For each such opinion witness identified
in this Answer to Interrogatory No. 17, state:

a. the subject matter on which each such opinion
witness is expected to testify;

b. the opinion witness' conclusion(s) or
opinion(s) with respect to each and every sub-
ject on which the opinion witness is expected
to testify;

c. the basis or bases for each and every conclu-
sion or opinion on which the opinion witness is
expected to testify; and

d. the opinion witness' qualifications, including
but not limited to his/her educational back-
ground, practical experience in the area he is
expected to testify in, any articles or papers
he has written, any and all seminars or post-
graduate training the opinion witness has
received, the opinion witness' experience, if
any, as a teacher or lecturer and his/her pro-
fessional appointments and association. (In
lieu of answering No. 15d, a complete
curricu/zrrrl vitae of the opinion witness may
be attached to the Answers to Interrogatories).

**Response: Experts, if any, have not as yet been ascertained.**

Contention:    18. State whether each and every opinion witness
identified in answer to Interrogatory No. 17 has
issued a written report. If so, provide all reports

of each and every opinion witness identified herein.

Response: Not as yet.

Contention:    19. State the name, last known address and telephone
number of each witness who will testify at trial on
your behalf. For each witness identified herein,
state the subject matter of their testimony.

Response: Trial witnesses have not as yet been identified.

Contention:

*/s/ Kenneth N. Flaxman*

KENNETH N. FLAXMAN
ARDC No. 830399
200 S Michigan Ave Ste 1240
Chicago, IL 60604-2430

(312) 427-3200 (phone)
(312) 427-3930 (fax)
knf@kenlaw.com (email)

*attorney for plaintiff*

# VERIFICATION

The undersigned, under penalties of perjury, certifies that he has read the foregoing interrogatory answers and that the same are, to the best of his knowledge, information, and belief, true.

Dated:  May __, 2004

_____
David Bourke

# CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of March, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  James L. DeAno, Esq., Deano & Scarry LLC, 2100 Manchester Rd., Ste A-101, Wheaton, IL 60187-4579, and Thomas P. McGarry, Renee O. Kelly, Hinshaw & Culbertson LLP, 222 N LaSalle St, Ste 300, Chicago, IL 60601, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:  none.


/s/ Kenneth N. Flaxman

_____
Kenneth N. Flaxman
ARDC Number 08830399
200 S Michigan Ave, Ste 1240
Chicago, IL 60604-2430
(312) 427-3200 (phone)
(312) 427-3930 (fax)
knf@kenlaw.com (email)