UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID BOURKE,<br><br>    Plaintiff,<br><br>    v.<br><br>VILLAGE OF DOWNERS GROVE, *et al.*,<br><br>    Defendants. | No. 03 C 7749<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

**I. BACKGROUND**

Plaintiff filed a complaint for a civil action arising under 42 U.S.C. § 1983 against employees of the Village of Downers Grove Illinois for allegedly suppressing exculpatory evidence in a criminal homicide trial that resulted with a jury finding Plaintiff guilty of first degree murder. In his complaint, Plaintiff also asserted a supplemental state law claim of legal malpractice against Defendants, attorneys who represented him at trial. Defendants now move for summary judgment. For the following reasons, Defendants' Motion for Summary Judgment is granted.

**II. STATEMENT OF FACTS**

The facts in this case are largely undisputed. On April 16, 1998, in the Village of Downers Grove, Plaintiff Bourke shot and killed Roger Johnson. He was arrested that same day and was later charged with murder. Plaintiff retained Defendants to represent him at trial. During the week-long jury trial, on behalf of Bourke, Defendants presented affirmative defenses of use of force in defense of a person, 720 ILCS 5/7-1 (West 1998) and use of force in defense of a dwelling (720 ILCS 5/7-2). Bourke was found guilty of first-degree murder and sentenced to

twenty-five years in jail.  The presiding judge denied his motion for a new trial stating "I don't feel there is any basis for me to usurp the jury's finding of fact in this case[.]"  Bourke appealed his conviction, arguing that (1) the State failed to disprove his affirmative defense and prove the elements of first-degree murder beyond a reasonable doubt, (2) his conviction should be reduced to second-degree murder, (3) he received ineffective assistance of counsel where counsel failed to strike two prospective jurors, move to exclude photos and recordings, and object to several of the State's remarks during closing argument.  The Illinois Appellate Court reversed Plaintiff's conviction on the ground that the State failed to disprove Plaintiff's affirmative defense claim beyond a reasonable doubt.  The court did not reach the other arguments put forth by Bourke.

In his civil complaint, Plaintiff alleges that he was wrongly convicted as a result of Defendants' (1) failure to present testimony from a crime scene expert who would have rebutted the State's reading of the evidence, (2) stipulation to the admission of a tape recording that contained "gaps of apparent erasure," and excluded evidence that would have helped Plaintiff's case, (3) failure to exercise professional judgment in selecting the jury, to object to the admission of prejudicial photographs, and to object to the use of the aforementioned tape recording.  Plaintiff has since limited his case to the single claim of malpractice arising from allegations that Defendants failed to exercise reasonable professional judgment in choosing a jury.

The voir dire and jury selection took place on April 20, 1999.  Defendant was present and seated with his attorneys.  Before Defendants questioned the jury pool, the State exercised two peremptory challenges, and asked to strike Juror No. 193 for cause – a request that was denied.  The court conducted its own voir dire and as a result excused two prospective jurors**.**

During their own voir dire, Defendants introduced several issues relevant to Bourke's case – the case involved self-defense, a gun was involved in the homicide, Bourke was the cause of a violent death, and that he lived in a "transient motel." Juror No. 9, a chemist, expressed concerns about firearms. Defendants asked the juror if he felt he could put those feelings aside and judge Bourke fairly, to which he responded "I think so." Juror No. 193 had some difficulty understanding English, and had trouble with one of the questions Defendants posed to her – whether she would be able to judge Bourke fairly and hold the State to its burden, notwithstanding the violent nature of the crime. Defendants repeated the question in a different form and asked if the juror understood. She replied that she did, and then answered positively.

Defendants consulted with Bourke and decided not to exercise any peremptory challenges. Jurors No. 9 and No. 193 were chosen as part of the panel, although Juror No. 193 was excluded during the trial and replaced by an alternate. Plaintiff makes no allegations of any jury misconduct, nor does Plaintiff claim to know what would have resulted had any of the jurors been eliminated by peremptory challenge.

### III. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the nonmoving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## IV. ANALYSIS

"To prevail on a legal malpractice claim, the plaintiff client must plead and prove that the defendant attorneys owed the client a duty of due care arising from the attorney-client relationship, that the defendants breached that duty, and that as a proximate result, the client suffered injury." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 856 N.E.2d 389, 394 (Ill. 2006). Additionally, "under Illinois law a plaintiff must prove his innocence before he may recover for his criminal defense attorney's malpractice." *Kramer v. Dirksen*, 695 N.E.2d 1288, 1290 (Ill. App. 1998). Defendants argue that (1) Illinois law and public policy preclude liability for an attorney's exercise of professional judgment in selecting a jury; (2) as a matter of law,

Defendants' actions and/or omissions cannot be the proximate cause of Plaintiff's purported injuries; and (3) Plaintiff's claims are speculative as a matter of law.  Because Plaintiff's claim cannot survive the issues raised with regard to the intertwined matters of proximate cause and the speculative nature of the injury, I need not reach the question of whether public policy precludes liability in this case.

In order for Plaintiff to succeed in a legal malpractice action, he must show proximate cause "establishing that 'but for' the attorney's malpractice, [P]laintiff would have prevailed in the underlying action." *Preferred Personnel Services, Inc. v. Meltzer, Purtill and Stelle, LLC*, 902 N.E.2d 146, 151 (Ill. App. 2009).  In this case, Plaintiff supports his attorney malpractice claim with expert opinion.  Attorney David Thomas offers the opinion that Defendants "did not meet the standard of care reasonably to be expected from criminal defense counsel in 1999."

According to Thomas, Defendants' questioning during voir dire did not sufficiently probe the attitudes and practices of the potential jurors.  He notes that Defendants failed to ask background questions, even when Juror No. 9 was clearly bothered that Bourke kept a gun in his motel room.  Defendants did ask the juror whether he could put these feelings aside and fairly judge Bourke, to which he responded, "I think so."  Thomas explained that, "[a]lthough counsel later rehabilitated the hesitant man by asking leading questions, counsel never explored with the juror why he had this attitude and what contributed to it. Without this information, there is no way to judge the worth of the juror's later responses to leading questions."  However, Defendant Brucar testified that he got the impression that Juror No. 9, a chemist, was someone "who would very specifically follow the law."

Thomas also points to the questioning of Juror No. 193, who, according to Thomas,

"quite frankly stated more than once that the violent nature of the offense charged made it more likely that she would find Mr. Bourke guilty than if he were charged with a non-violent offense. Defense counsel never even rehabilitaed her on this issue, let alone find [sic] out the basis for her prejudice." While Thomas's reading of the transcript here is debatable due to the juror's difficulty understanding English, the selection of Juror No. 193 could not have impacted the verdict since she was excused from service during the trial.

During their voir dire, Defendants introduced several issues relevant to Bourke's case – the case involved self-defense, a gun was involved in the homicide, Bourke was the cause of a violent death, and that he lived in a "transient motel." According to Thomas, there were entire relevant areas, such as consumption of alcohol, that were not even broached, despite the fact that excessive alcohol consumption played a major role in the offense. However, Defendant Brucar testified that raising such an issue is "situation specific," noting that where both the victim and defendant were using alcohol, raising the issue is a double-edged sword.

It is true that Defendants made neither challenges for cause, nor peremptory challenges as they were satisfied with the panel that was chosen. By the time of the Defendants' voir dire, several potential jurors had already been dismissed on the basis of the State's questioning and the Judge's own questioning. Defendant Conger testified that, as part of the calculus in declining to exercise any challenges, Defendants considered what they knew about the remaining potential jury pool.

In his opinion, Thomas concludes that "there is a reasonable likelihood that deficient performance of counsel resulted in the guilty verdict, because, as the Appellate Court found, the evidence strongly supported Mr. Bourke's position." According to the court, no rational trier of

fact could have found Bourke guilty of murder beyond a reasonable doubt due to the State's failure to meet its burden.  It is the jury's irrationality that Plaintiff attempts to ascribe to Defendants' action in selecting the jury.

"We leave probable cause to juries because it is often debatable, and fair-minded persons might reach different outcomes[.]" *First Nat'l Bank of LaGrange v. Lowrey*, 872 N.E.2d 447, 469 (Ill. App. 2007) (quotations omitted).  But, "[w]hile the issue of proximate cause typically is one of fact, where reasonable persons cannot disagree, it is one of law." *Gelsomino v. Gorov*, 502 N.E.2d 264, 268 (Ill. App. 1986).

In this case, reasonable persons cannot disagree, in fact they don't disagree.  Bourke testified that he does not know what the result would have been had any of the juror not been selected to serve.  Plaintiff's expert Thomas concludes that "there is a reasonable likelihood" that the allegedly deficient performance of counsel resulted in the guilty verdict.  Neither Bourke nor Thomas claims that but for the Defendants' actions Plaintiff would have prevailed.

> No one knows in advance how a potential juror will react to the evidence, or how the jurors will interact with each other in the jury room. Even experienced advocates find predictions difficult. The best available study concludes that both prosecutors and defense counsel, in exercising peremptory challenges, are as likely to remove from the jury persons who favor their cause as persons who vote against it.

*U.S. v. Boyd*, 86 F.3d 719, 724 (7th Cir. 1996) (improper exercise of peremptory challenges by the defense does not entitle defendant to a new trial where the challenge does not rise to the level of ineffective assistance of counsel).

Nowhere in Plaintiff's response to Defendants' Motion for Summary Judgment does he discuss but-for causation, nor does he present expert testimony to support it.  Plaintiff instead

argues that the court should reject Defendants' claim that "malpractice in jury selection cannot, as a matter of law, be the proximate cause of an erroneous conviction." However, that is not what Defendants claim. They are not arguing that malpractice can never be the proximate cause of an erroneous conviction, only that it is not the case here, under these facts. Several potential jurors had already been dismissed prior to the Defendants' voir dire. Plaintiff alleges no misconduct by Juror No. 9, the only juror who, according to Plaintiff, raised a red flag through one of his responses. Plaintiffs could (but don't) argue that, had Defendants asked more questions or probed more deeply, they might have uncovered some biases or prejudices that might have led the jury to a unanimous guilty verdict, however this would be too speculative an argument. Defendants raised issues relative to the case, asked jurors whether they could be fair and impartial and received positive responses. The presiding judge saw no reason to usurp the jury's fact-finding role.

In his report, Thomas points to only one issue that he believes should have been raised and wasn't – excessive alcohol consumption. It is unclear how raising this issue would have revealed any prejudice that might have led to an erroneous unanimous guilty verdict, especially where there was evidence that both Bourke and the victim had been drinking. It might be possible that such a question might have illicited feelings of disdain toward a drunk victim, and a lack of impartiality toward the person who killed him, but this is too speculative to satisfy but-for causation.

"Actual damages in a legal malpractice case are not presumed; a plaintiff must plead and prove that she has suffered injuries resulting from the defendant attorney's alleged malpractice." *Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1247 (Ill. App. 2008). The court in *Merritt v.*

*Goldenberg*, 841 N.E.2d 1003, 1010 (Ill. App. 2005) explained that "[t]he malpractice plaintiff must prove a case within a case, that is, the plaintiff is required to prove the underlying action and what his recovery would have been in that prior action absent the alleged malpractice." While here, Plaintiff's underlying action does not involve recovery, the point is well-taken. The Appellate Court's order supports the notion that Plaintiff could have, indeed should have, succeeded in the underlying action. However, he has failed to provide "definite, competent evidence," as required to survive a summary judgment motion, that Defendants' alleged malpractice caused guilty verdict, or that Defendants' conduct resulted in the selection of an irrational jury. Because Plaintiff fails to establish sufficient facts in support of proximate causation, his claim cannot survive.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: May 29, 2009